

PMC 12pm

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Zachary A. Myers*
*Assistant United States Attorney*
*Zachary.Myers@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4848*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

August 27, 2014

Brendan A. Hurson
100 S Charles St Twr II 9th Fl
Baltimore, MD 21201

    Re:    United States v. Craig Okeido Anderson, WDQ-14-00042

Dear Mr. Hurson:

       This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted on August 27, 2014, it will be deemed withdrawn.

       The terms of the agreement are as follows:

### Offenses of Conviction

     1.    The Defendant agrees to plead guilty to Count Nine of the Superseding Indictment which charges him with Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Section 922(g)(1). The Defendant admits that the Defendant is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

     2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.  The Defendant knowingly possessed;
    b.  a firearm;
    c.  in and affecting interstate commerce;
    d.  after conviction for a crime punishable by over one year imprisonment.

## Penalties

3. The maximum sentence provided by statute for the offense to which your client is pleading guilty is imprisonment for not more than ten (10) years, followed by a term of supervised release of not more than three (3) years and a fine of up to $250,000.

4. In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order the Defendant to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if the Defendant serves a term of imprisonment, is released on supervised release, and then violates the conditions of supervised release imposed by the Court, the Defendant's supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

5. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had persisted in a plea of not guilty, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to

testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against the Defendant. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights the Defendant is giving up and about the facts of the Defendant's case. Any statements the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if the Defendant is not a citizen of the United States, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including defense counsel or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

   a. The base offense level is twenty (20) pursuant to U.S.S.G. §2K2.1(a)(4)(B), because the offense involved a semiautomatic firearm that was capable of accepting a large capacity magazine, and at the time of the offense the firearm had attached to it, or was in close proximity to, a magazine or similar device that could accept more than fifteen (15) round of ammunition.

   b. Pursuant to U.S.S.G. §2K2.1(b)(6)(B), there is a four (4) level increase because the Defendant used or possessed the firearm and ammunition in connection with another felony offense, to wit, the prostitution enterprise described in Exhibit A, and as charged in Count One of the Superseding Indictment.

   c. Pursuant to U.S.S.G. §3C1.1, there is a two (2) level increase because the Defendant willfully attempted to obstruct or impede the administration of justice with respect to the investigation and prosecution of this offense and its related conduct, to wit, while incarcerated the Defendant called another individual and directed them contact a witness with respect to this offense and request that they provide false information to investigators, which the individual then did.

8. This Office does not oppose a two-level reduction in the Defendant's combined adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for your client's criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to accept personal responsibility for your client's conduct up to, and through, sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about your client's involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw your the plea of guilty.

9. Thus, the final anticipated adjusted offense level twenty-three (23), after the anticipated adjustment for acceptance of responsibility.

10. The Defendant understands that there is no agreement as to the Defendant's criminal history or criminal history category, and that the Defendant's criminal history could alter the Defendant's offense level if the Defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11.     This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4, or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

## Rule 11(c)(1)(C) Plea

12.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of <u>84 months imprisonment</u> is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

13.     Other than the offenses to which the Defendant has agreed to plead guilty, this Office will not prosecute the Defendant for any other violations of federal criminal law that arise from the facts stipulated by the Defendant and this Office, attached hereto and incorporated herein, that form the basis of this plea agreement.

14.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

15.     Following the Defendant's plea of guilty to the offenses charged in Count Nine of the Superseding Indictment, and the imposition of sentence for that offense, the government agrees to move to dismiss Counts One, Two, Three, Four, Five, Six, Seven and Eight, with prejudice, pursuant to Federal Rule of Criminal Procedure 48(a).

## Waiver of Appeal

16.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

17. The Defendant agrees that the Defendant will not commit any offense in violation of federal, state or local law between the date of this agreement and the Defendant's sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG §3C1.1, (ii) fails to accept personal responsibility for the Defendant's conduct by failing to acknowledge the Defendant's guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw the Defendant's guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

18. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulations, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw the Defendant's guilty plea, and will remain bound to fulfill all of the Defendant's obligations under this agreement. The Defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or

representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

                Very truly yours,

                Rod J. Rosenstein
                United States Attorney

                By: Zachary A. Myers
                Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_8-27-14_         _Craig Anders___
Date                 Craig Okeido Anderson



I am Craig Okeido Anderson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_8/27/14_          _____
Date               Brendan A. Hurson, Esq.

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

CRAIG OKEIDO ANDERSON, a/k/a "Snap," a/k/a "Sir Chill," a/k/a "King Hundredgrand," a/k/a "Yung Royalty," (hereinafter "ANDERSON"), age 33, was a resident of the state of Maryland.

Beginning no later than on or about February 1, 2012, and continuing through on or about October 3, 2013, ANDERSON was a pimp who persuaded, induced, enticed and coerced women, including B.M. and I.O. to travel interstate, and transported women interstate, with the intent they engage in prostitution.

ANDERSON recruited women who he met in public and over the Internet to work for him as prostitutes. ANDERSON persuaded, induced, enticed and coerced women who worked for him, including B.M., I.O., J.C., and H.H., to make themselves available to engage in commercial sex by advertising themselves on websites that marketed commercial sex workers and dating websites throughout the country.

ANDERSON would routinely take all of the money from the women who worked for him and earned through engaging in prostitution and keep it for himself. ANDERSON provided the women who worked for him with controlled substances, including "molly," ecstasy, and marijuana as well as alcohol, in connection with and in order to facilitate the prostitution.

ANDERSON persuaded, induced, enticed and coerced women to walk the "track," areas of certain city streets frequented by commercial sex workers and commercial sex customers.

ANDERSON persuaded, induced, enticed and coerced women who worked for him to rent various hotel rooms to use to engage in prostitution.

ANDERSON, used various aliases to promote himself and his prostitution enterprise to women and to commercial sex customers, including "Snap," "Sir Chill," "King Hundredgrand," and "Yung Royalty."

ANDERSON promoted and persuaded, induced, enticed and coerced the women who worked for him to promote his prostitution enterprise as "Team Royalty" through advertisements and a website.

In August, 2012, ANDERSON purchased a Zastava Arms, model59/66A1, semi-automatic rifle, with serial number 596611949, and an extended magazine loaded with 7.62mm ammunition from G.S.  At the time he acquired the firearm, ANDERSON had already been convicted of a crime punishable by imprisonment for a term exceeding one year. Between August 2012 and his arrest on October 3, 2013, ANDERSON possessed and brandished the firearm during and in relation to his prostitution activities. This firearm was not manufactured in Maryland, and thus travelled in interstate or foreign commerce prior to being possessed by ANDERSON.  At the time he acquired ANDERSON stored this firearm in a vehicle he used to transport prostitutes who worked for him. On one occasion, ANDERSON threatened a drug dealer with the firearm after the drug dealer attempted to cheat B.M., J.C. and H.H. in a drug purchase. ANDERSON also used the firearm to threaten a commercial sex customer who would not leave during an encounter with B.M.

Some of the specific instances of interstate prostitution committed by ANDERSON include the following:

2

- On April 19, 2013, ANDERSON transported B.M. and I.O. from Maryland to the District of Columbia, with the intent that B.M. and I.O. engage in prostitution there. Advertisements for commercial sex services to be performed by B.M. and I.O. in the District of Columbia were posted on the websites backpage.com and craigslist.org. B.M. and I.O. stayed at the Motel 6 on 4th Street, NE, where they rented a room and engaged or attempted to engage in commercial sex.

- On July 24, 2013, ANDERSON transported B.M. and I.O. from Maryland to Newark, Delaware, with the intent that B.M. and I.O. engage in prostitution there. Advertisements for commercial sex services to be performed by B.M. and I.O. in Delaware were posted on the website backpage.com. B.M. and I.O. stayed at the Red Roof Inn on Stanton Christiana Road, where they rented rooms and engaged or attempted to engage in commercial sex.

- On August 8, 2013, ANDERSON transported I.O. from Maryland to Newark, Delaware, with the intent that I.O. engage in prostitution there. Advertisements for commercial sex services to be performed by I.O. in Delaware were posted on the website backpage.com. I.O. stayed at the Red Roof Inn on Stanton Christiana Road, where she rented a room and engaged or attempted to engage in commercial sex.

- On September 26, 2013, ANDERSON transported or aided and abetted in the transportation of I.O. from Maryland to Westbury, New York, with the intent that I.O. engage in prostitution there. Advertisements for commercial sex services to be performed by I.O. in New York were posted on the website backpage.com.

I.O. stayed at the Red Roof Inn on Dibblee Drive, where she rented a room and engaged or attempted to engage in commercial sex.

- Between September 26 and October 1, 2013, ANDERSON transported or aided and abetted in the transportation of I.O. from Westbury, New York to Linthicum Heights, Maryland, with the intent that I.O. engage in prostitution there. Advertisements for commercial sex services to be performed by I.O. in Maryland were posted on the website backpage.com. I.O. stayed at the Motel 6 on Raynor Avenue, where she rented a room and engaged or attempted to engage in commercial sex.

On October 3, 2013, ANDERSON was present at the Motel 6 on Raynor Avenue in Linthicum Heights, Maryland. In addition to ANDERSON, B.M., I.O., H.H. and J.C. were also staying at the hotel, where each of the women was engaging or attempting to engage in commercial sex. I.O., B.M. and J.C. rented rooms at the hotel in their own names. Advertisements for commercial sex services to be performed by B.M., I.O., J.C. and H.H., in Maryland, were posted on the website backpage.com.

On October 2, 2013, in a car in Maryland, ANDERSON repeatedly punched B.M. in the face in the presence of J.C. and H.H. As a result of ANDERSON beating her, B.M. suffered a severely bruised and swollen right eye, and needed medical attention. ANDERSON had previously beaten, slapped or otherwise physically harmed B.M. and J.C. on numerous prior occasions, in connection with their commercial sex work with ANDERSON. ANDERSON beat B.M. and J.R., the mother of some of ANDERSON's children, after B.M. disclosed ANDERSON's human trafficking activities to J.R., and J.R. and B.M. confronted him about being a pimp.

After his arrest on October 3, 2013, ANDERSON encountered H.H. and I.O. in the Howard County Detention Center and directed each of them not to speak to authorities if they were questioned about his activities. Also, while detained on state charges in connection with this case, ANDERSON called J.R. and directed her to call D.B., the prior owner of the gold Cadillac in which his firearm was found. ANDERSON told J.R. to tell D.B. to tell authorities that she did not recall ANDERSON or anything about him in connection with the gold Cadillac.

ANDERSON also directed J.R. to contact ANDERSON's state defense counsel and falsely state that J.R. beat B.M. and caused her injuries, not ANDERSON. At ANDERSON's direction, J.R. told ANDERSON's state defense counsel that she was responsible for B.M.'s injuries, not ANDERSON. ANDERSON's state defense counsel discounted this information, and advised J.R. not to make false statements on ANDERSON's behalf.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

8/27/14
Date

_____
Craig Okeido Anderson

5